[Crim. No. 7803. Second Dist., Div. Two. Nov. 20, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIE
YOUNG, Defendant and Appellant.

Willie Young, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Appellant was convicted of violating section 11500, Health and Safety Code (possession of heroin). Appellant was also charged with a prior narcotics conviction, which was found to be true, and that he had served a term in the state prison therefor. Probation was denied and appellant was sentenced to the state penitentiary. He has appealed from the judgment.

On February 4, 1961, at approximately 2:40 p. m., Officers Gillette, Beauchine and Green of the Los Angeles Police Department went to a hotel at 512 South Crocker Street in Los Angeles for the purpose of arresting the appellant on a misdemeanor warrant charging violation of section 148 of the Penal Code (resisting a public officer in the discharge of his duty). As Officer Beauchine was about to knock on the door of Room 33, Officer Green overheard a conversation which included the following: "Don't give it to her. Give that junk to me." Officer Green thereupon peered through a hole in the door. Officer Gillette then looked through the same hole. Officer Gillette observed five people in the room, including the appellant. Mildred Young, appellant's wife, was standing in the room with her right arm extended and Maggie Foster had a belt wound around it between the elbow and the shoulder. Appellant was heating something in a receptacle which resembled the cap of a wine bottle, over a cigarette lighter. After heating the contents of the receptacle he placed it and the lighter on the table and momentarily disappeared from the officer's view. He returned in a few moments with an eye dropper which had an hypodermic needle attached to the end of it. Appellant emptied a substance from a small balloon into the receptacle, stirred it with the point of a knife blade, placed the point of the needle into the receptacle, holding it there for a few moments, and apparently squeezing the rubber end of the eye dropper. He then made a movement toward Mildred Young as if to insert the needle into her arm. In the opinion of Officer Gillette the appellant and the other occupants of the room were engaged in "giving and taking a fix" of narcotics. Officer Gillette thereupon kicked the door

in. As he entered the room he observed appellant make a throwing motion toward the window, but he did not see what he threw. He simply saw the appellant pull back the curtain and throw whatever he had in his hand. The officer looked out of the window and saw what appeared to be an eye dropper and some other small items on the roof of a car parked in a lot below the window. After the occupants of the room were arrested, Officer Gillette directed another officer to recover the articles on the roof of the car, which proved to be an eye dropper and hypodermic needle. Officer Gillette seized the bottle cap, which was still on the table. It contained approximately one-half grain of powder which proved to be heroin. The officer examined the arm of each person in the room and found marks which in his opinion indicated that each of the persons had received an injection of narcotics.

Appellant denied having had any part in the preparation of a fix and also denied having thrown the eye dropper and hypodermic needle out of the window. Others in the room gave testimony which, if believed, would have tended to exonerate him.

In seeking a reversal appellant contends that the evidence is insufficient to support the judgment in that since the police officer testified that he did not see the object thrown out of the window by the appellant there was no proof of his possession of narcotics and that under the rules of circumstantial evidence the existence of a hypothesis other than guilt leaves the court with the obligation to acquit the appellant, and that the judge erred in not accepting the testimony of appellant and his witnesses which exculpated him from guilt. We find no merit in appellant's argument.

 The offense of unlawful possession of narcotics consists of two elements: (1) physical or constructive possession; and (2) knowledge of the character of the substance and the unlawfulness of its possession. (*People v. Holloway,* 177 Cal.App.2d 287, 292 [2 Cal.Rptr. 48].) The evidence that appellant had the receptacle which was found to contain heroin in his hand, heating it, definitely shows that he had physical possession of the contraband and was exercising exclusive control over it, thus establishing his possession of the narcotic. That appellant was aware that the substance he possessed was heroin may reasonably be inferred from the evidence that he also had in his possession an eye dropper with an hypodermic needle affixed to it, which is paraphernalia that is generally used to administer narcotics (*People v.*

*Lepur,* 175 Cal.App.2d 798, 801 [346 P.2d 914] ) ; the marks on his arm, indicating that he had received injections of narcotics (*People* v. *Hancock,* 156 Cal.App.2d 305, 312 [319 P.2d 731] ) ; the fact that he had previously been convicted of violating section 11500, Health and Safety Code (*People* v. *Linyard,* 151 Cal.App.2d 50, 55 [311 P.2d 57] ) ; and that having the eye dropper and hypodermic needle in his hand he made a throwing motion toward the window and an eye dropper and hypodermic needle were subsequently found beneath the window, from which act it could reasonably be inferred that he was attempting to rid himself of incriminating evidence, thus disclosing a consciousness of guilt (*People* v. *Tolliver,* 179 Cal.App.2d 736, 740 [4 Cal.Rptr. 271] ). The foregoing evidence is ample to establish that the appellant knew that the substance that he was mixing and drawing into the hypodermic syringe was a narcotic. From the foregoing facts and circumstances it may reasonably be inferred that the hypodermic needle and eye dropper which were found on the top of a car underneath the window were the objects that he attempted to dispose of when the officers entered, even though the officer did not see them leave his hand. (See *People* v. *Small,* 159 Cal.App.2d 582, 585 [324 P.2d 110].)

 Appellant's contention that the rules governing circumstantial evidence required a trial court to acquit him if there existed a hypothesis other than that of guilt is adequately answered by the following statement from *People* v. *Torres,* 98 Cal.App.2d 189 [219 P.2d 480] at page 193: ''Where the circumstances in evidence are such as would reasonably justify an inference of guilt, and the court so found, the fact that an inference of innocence might also just as reasonably have been predicated on such circumstances does not present a question of law reviewable by an appellate court.''

There is, of course, no merit whatever in appellant's contention that the court erred in refusing to give credence to his testimony and that of his witnesses. The law is thoroughly established that although the defendant's story is supported by other witnesses it is for the trier of fact to say whether it is to be believed. (*People* v. *Shellenberger,* 25 Cal. App.2d 402, 406 [77 P.2d 506] ; *People* v. *Dupree,* 156 Cal. App.2d 60, 67 [319 P.2d 39].) It is implicit in the trial court's decision that he did not believe the appellant and his witnesses but chose rather to believe the testimony of the

police officers. It is the trial judge's province to determine the credibility of the witnesses and the weight to which their testimony is entitled. There is no semblance of error here.

The judgment is affirmed.

Ashburn, J., and Herndon, J., concurred.